1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  THOMAS R. GREEN (CABN 203480)
   BENJAMIN K. KLEINMAN (NYBN 5308189)
5  IVANA DJAK (NYBN 5516687)
   Assistant United States Attorneys
6
        1301 Clay Street, Suite 340S
7       Oakland, California 94612
        Telephone: (510) 637-3680
8       FAX: (510) 637-3724
        Thomas.green@usdoj.gov
9       Benjamin.kleinman2@usdoj.gov
        Ivana.djak@usdoj.gov
10

11 Attorneys for United States of America

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                   OAKLAND DIVISION

15

16 UNITED STATES OF AMERICA,            )  Case No. 25-CR-90 YGR
                                        )
17        Plaintiff,                    )  **UNITED STATES' OPPOSITION TO**
                                        )  **DEFENDANTS' MOTIONS TO DISMISS**
18    v.                                )
                                        )  Hearing Date:  March 5, 2026
19 DAVID SANSON, and                    )  Hearing Time: 2:00 p.m.
                                        )  Courtroom:    1, 4th Floor
20 TRENT SANSON,                        )
                                        )  Hon.  Yvonne Gonzalez Rogers
21        Defendants.                   )
   ─────────────────────────────────   )

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.      Introduction.................................................................................................................1

II.     Allegations In The Indictment ....................................................................................2

III.    Procedural History ......................................................................................................4

IV.     Legal Standard ............................................................................................................5

        A.      A Motion to Dismiss Under Rule 12 ...............................................................5

        B.      Bribery of a Local Government Official in Violation of 18 U.S.C. § 666(a)(2) ................6

V.      Argument .....................................................................................................................7

        A.      The Indictment Comfortably Meets All Pleading Standards, and Defendants
                Have Not and Cannot Credibly Claim Otherwise............................................7

        B.      Bribe Giving in Violation of 18 U.S.C. § 666(a)(2) Does Not Require a Quid
                Pro Quo. ...........................................................................................................9

        C.      The Indictment Plainly and Sufficiently Alleges a Violation of 18 U.S.C.
                § 666(A)(2), As Well as the Unrequired Quid Pro Quo Element Defendants
                Assert is Missing.............................................................................................14

VI.     Conclusion .................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dennis v. United States,*
   384 U.S. 855 (1966)................................................................................................ 17

*Evans v. United States,*
   504 U.S. 255 (1992)................................................................................................ 16

*Hamling v. United States,*
   418 U.S. 87 (1974)................................................................................................ 5, 9

*McCormick v. United States,*
   500 U.S. 257 (1991)........................................................................................ 11, 12

*McDonnell v. United States,*
   579 U.S. 550 (U.S., 2016)...................................................................................... 10

*Snyder v. United States,*
   603 U.S. 1, 144 S. Ct. 1947, 219 L. Ed. 2d 572 (2024)........................................ 13

*United States v. Adams,*
   760 F. Supp. 3d 6 (S.D.N.Y. 2024) ........................................................... 13, 15, 16

*United States v. Bailey,*
   444 U.S. 394 (1980)............................................................................................ 5, 7

*United States v. Benjamin,*
   95 F.4th 60 (2d Cir. 2024) ........................................................................ 15, 16, 17

*United States v. Berger,*
   473 F.3d 1080 (9th Cir. 2007) ................................................................................ 5

*United States v. Blagojevich,*
   794 F.3d 729 (7th Cir. 2015) ................................................................................ 12

*United States v. Boren,*
   278 F.3d 911 (9th Cir. 2002) .................................................................................. 5

*United States v. Buckley,*
   689 F.2d 893 (9th Cir. 1982) .............................................................................. 5, 6

*United States v. Carpenter,*
   961 F.2d 824 (9th Cir. 1992) .......................................................................... 11, 16

*United States v. Correia,*
   55 F.4th 12 (1st Cir. 2022).................................................................................... 12

*United States v. Critzer,*
   951 F.2d 306 (11th Cir.1992) ................................................................................. 9

*United States v. Crow,*
   824 F.2d 761 (9th Cir. 1987) .............................................................................. 5, 7

*United States v. Donagher,*
   520 F. Supp. 3d 1034 (N.D. Ill. 2021) .......................................................... 7, 8, 12

*United States v. Gambina,*
   988 F.2d 123 (9th Cir. 1993) ................................................................................ 17

*United States v. Garrido,*
   713 F.3d 985 (9th Cir. 2013) ...................................................................... 10, 12, 15

*United States v. Gjieli,*
   717 F.2d 968 (6th Cir. 1983) .......................................................................... 11, 12

*United States v. Hamilton*

46 F.4th 389 (5th Cir. 2022) ................................................................................................. 13

*United States v. Hernandez,*
Case No. No. 20-50012, 2021 WL 3579386 (9th Cir. 2021)........................................... 15

*United States v. Jensen,*
93 F.3d 667 (9th Cir. 1996) ............................................................................................ 5, 9

*United States v. Johnson,*
621 F.2d 1073 (10th Cir. 1980) .......................................................................................... 11

*United States v. Kaneshiro,*
Case No. 22-CR-48, 2023 WL 4236175 (D. Haw. June 28, 2023) ....................... 13, 15, 16

*United States v. Kim,*
577 F.2d 473 (9th Cir.1978) ............................................................................................... 17

*United States v. King,*
200 F.3d 1207 (9th Cir. 1999) ............................................................................................. 5

*United States v. Lindberg,*
39 F.4th 151 (4th Cir. 2022) ............................................................................................... 11

*United States v. Marra,*
481 F.2d 1196 (6th Cir. 1973) ............................................................................................. 5

*United States v. McNair,*
605 F.3d 1152 (11th Cir. 2010) .......................................................................................... 10

*United States v. O'Donovan,*
126 F.4th 17 (1st Cir. 2025)........................................................................................... 11, 12

*United States v. Pawlowski,*
27 F.4th 897 (3d Cir. 2022) ........................................................................................... 8, 13

*United States v. Rasco,*
853 F.2d 501 (7th Cir.) .................................................................................................. 11, 12

*United States v. Ring,*
706 F.3d 460 (D.C. Cir.)....................................................................................................... 11

*United States v. Sampson,*
371 U.S. 75 (1962)................................................................................................................. 5

*United States v. Shen Zhen New World I, LLC,*
115 F.4th 1167 (9th Cir. 2024) ...................................................................................... 1, 7, 9

*United States v. Shoemaker,*
746 F.3d 614 (5th Cir. 2014) .............................................................................................. 11

*United States v. Siegelman,*
640 F.3d 1159 (11th Cir. 2011) ........................................................................................... 13

*United States v. Silver,*
948 F.3d 538 (2d Cir. 2020).............................................................................................. 11

*United States v. Sittenfeld,*
128 F.4th 752 (6th Cir. 2025) ........................................................................................... 12

*United States v. Suhl,*
885 F.3d 1106 (8th Cir. 2018) ..................................................................................... 10, 11

*United States v. Sun-Diamond Growers Of California,*
526 U.S. 398, 119 S. Ct. 1402, 143 L. Ed. 2d 576 (1999)..................................... 12, 15, 16

*United States v. Traitz,*
871 F.2d 368 (3d Cir.).......................................................................................................... 11

*United States v. Walczak,*
783 F.2d 852 (9th Cir. 1986) ............................................................................................... 17

**Statutes**

18 U.S.C. § 201 ................................................................................................................ 10,16
18 U.S.C. § 371 ............................................................................................................... 4, 6, 7
18 U.S.C. § 666 ....................................................................................................... 6, 12, 13, 17
18 U.S.C. § 1951(b)(2) ........................................................................................................ 11

**Rules**

Federal Rule of Criminal Procedure 7(c)(1) ........................................................................ 5
Federal Rule of Criminal Procedure 6(e)(3)(C)(i) ............................................................ 17
Federal Rule of Criminal Procedure 12(b) .......................................................................... 5

## I.    INTRODUCTION

The United States submits this opposition to the motion to dismiss the Indictment filed by defendant David Sanson (hereinafter "D. SANSON") and joined by defendant Trent Sanson (hereinafter "T. SANSON") (collectively "Defendants").  Dkts. 32 and 37.  The government submits a single opposition to both motions because T. SANSON's motion for joinder pertains to the same Indictment and reiterates the same arguments outlined in D. SANSON's motion to dismiss the Indictment.

Defendants' motions should be summarily denied for three reasons, each of which is sufficient on its own to deny Defendants' motions.  First, Defendants' motion largely ignores the barebones pleading standards governing the sufficiency of an indictment.  If an indictment tracks the language of the criminal statute alleged to have been violated and informs a defendant of the charge(s) alleged, then it meets the requirements of Rule 7(c).  Defendants' motions do not claim that the Indictment suffers such deficiencies and rely almost exclusively on caselaw addressing the sufficiency of evidence post-trial rather than the sufficiency of allegations in an indictment.  In paying short shrift to the applicable standard and trying to recast their bribes as a lawful exercise of their First Amendment rights, Defendants' motions read more like a civil summary judgment motion or a trial brief than a motion to dismiss a criminal indictment.  But tellingly, Defendants do not complain that they do not understand the charges levied against them.  And in attempting to concoct a counter narrative to explain the bribes they paid, Defendants demonstrate that the Indictment has indeed advised them of the charges they face.

Second, Defendants' motions are based on the incorrect premise that a quid pro quo must be proven and alleged in a case brought against a bribe payor under 18 U.S.C. § 666(a)(2).  Defendants rely predominantly on caselaw applicable to instances where the defendants were public officials charged in bribery schemes under a variety of statutes, rather than the applicable standard for bribe payors charged with violating Section 666(a)(2), as recently clarified in *United States v. Shen Zhen New World I, LLC*, 115 F.4th 1167, 1213 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2814 (2025).

Third, even if Defendants were correct that bribery charges against a bribe payor required alleging a quid pro quo in an indictment, the Indictment in this case alleges such a quid pro quo.  In both the introductory allegations in the Indictment, and the language applicable to each count, the government plainly alleges the offer and payment of a bribe "in exchange for" official acts.  The

Indictment thus meets even the incorrect standard Defendants urge the Court to adopt, creating yet another basis to deny their motions.

For each of these reasons detailed below, the Court should deny Defendants' motions to dismiss.

## II.    ALLEGATIONS IN THE INDICTMENT

The Indictment in this case alleges the following:

Beginning at a date unknown to the grand jury but no later than on or about May 29, 2024, and continuing through at least June 20, 2024, the Defendants, owners of a home building and development company (described in the Indictment as "the Development Company"), engaged in a bribery scheme wherein they bribed a councilmember of the City of Antioch (described in the Indictment as the "Councilmember").  Dkt. 1, Indictment ¶ 1.  The meetings with the Councilmember were video recorded.  *See id.*

The first paragraph of the Indictment alleges a quid pro quo.  The Indictment states, "the scheme involved an offer of $10,000 **in exchange for** favorable treatment for one of the Development Company's building projects, the Aviano project."  *See id*. (emphasis added).  The Indictment then goes on to outline the details of the quid pro quo perpetrated by D. SANSON and T. SANSON.  The Indictment highlights that on June 12, 2024, T. SANSON asked the Councilmember "to place on the Antioch City Council agenda, and vote in favor of, the following item: 'A tract acceptance for Phase 3 at Aviano to release the completion and guarantee bonds . . . .'"  *Id.* ¶ 15.  The Indictment further alleges that. "T. SANSON asked the Councilmember for the Councilmember's assistance and vote in the hopes that the Antioch City Council would approve release of the bond and effectively override the Antioch Engineering and Development Services Division's position that further work was required by the Development Company to complete its obligations on Phase 3 of Aviano."  *Id.*  T. SANSON's ask of the Councilmember was the first part of the quid pro quo.

In that same conversation with the Councilmember, the Indictment then lays out the second part of the quid pro quo, alleging, "**In exchange for the Councilmember's actions**, T. SANSON told the Councilmember [at that same June 12, 2024, meeting] that he spoke with his father, **D. SANSON, in advance of the meeting**, and **D. SANSON was 'willing' to pay the Councilmember $10,000**."  *Id.* ¶ 16. (emphasis added).  The Indictment then further alleges that "T. SANSON ultimately told the

1    Councilmember that he'd check with D. SANSON to determine if they could pay $5,000 to the

2    Councilmember's IE [Independent Expenditure] account and $5,000 in cash." *Id*. The Indictment thus

3    alleges a bribery scheme wherein both T. SANSON and D. SANSON have conspired to bribe the

4    Councilmember.

5         The Indictment then outlines D. SANSON's payment of the bribe of the Councilmember on June

6    20, 2024, which had already been offered by T. SANSON. The Indictment alleges that D. SANSON

7    told the councilmember, "Anyways, Trent called me and told me that he met with you last week, and I

8    told him OK let me take care of it. I don't want you involved." Indictment ¶ 17. In referencing the

9    prior meeting with his son, and expressing that he would take care of it and did not want his son further

10   involved, D. SANSON demonstrated both his awareness of the bribery scheme and his state of mind that

11   he was trying to minimize risk to his son. The Indictment further alleges that D. SANSON told the

12   Councilmember, in pertinent part, that "this had to be done in person." *Id.* Again, the Defendant's own

13   statements reveal that he was aware of the illicit nature of his actions.

14        The Indictment then alleges that "D. SANSON informed the Councilmember that he'd been in

15   touch with the political consultant running the Councilmember's IE," *id.,* the implication being that D.

16   SANSON was going to donate to the Councilmember's campaign. The Indictment then alleges that D.

17   SANSON stated, "[T]hat's all still on track for round two. We did it during the primary, and now for

18   the general – we're back committed to supporting you and all that. So, I just want you to know that's

19   happening – that it's not just a false commitment or anything like that; and then Trent told me you

20   needed a little extra shot." *Id.*

21        The Indictment alleges that D. SANSON then handed the Councilmember a travel coffee mug

22   branded with the Development Company insignia, which contained $5,000 in cash. *Id.* The

23   Councilmember informed D. SANSON that he had a detailed conversation with T. SANSON, and that

24   he understood what D. SANSON and T. SANSON were asking him to do. *See id.* The Indictment

25   alleges that D. SANSON replied, referencing the phase of the Aviano development project at the heart

26   of the bribe, "Yeah – Phase 3," and reiterated, "the project has been finished." The Indictment then

27   specifically alleges that "On or about June 20, 2024, D. SANSON paid the Councilmember $5,000 in

28   cash in furtherance of the bribery scheme." *Id.* ¶ 21.

In conclusion, the Indictment, as outlined in the first paragraph, alleges a conspiracy to commit a bribery scheme wherein the defendants offered $10,000 **in exchange for** favorable treatment for one of the Development Company's building projects, the Aviano project.  As argued below, all of the elements of the crimes are alleged in the charged counts themselves, outlining that the defendants "would and did corruptly give, offer and agree to give a thing of value to the Councilmember, intending to influence the Councilmember in connection with any business . . . a thing of value of $5,000 or more." *Id.* ¶ 20 (same language in a different tense in ¶ 23).  The quid pro quo is also re-summarized in the conspiracy and bribery charges themselves within the Indictment, alleging:

- T. SANSON met with the Councilmember and during the course of their meeting, explained that he and D. SANSON were willing to pay the Councilmember $10,000 in exchange for the Councilmember's efforts to place on the Antioch City Council agenda, and vote in favor of, "[a] tract acceptance for Phase 3 at Aviano to release the completion and guarantee bond." Indictment ¶ 21(b).

- "Specifically, D. SANSON and T. SANSON gave, offered, and agreed to give, including but not limited to, (1) $5,000 in cash and (2) a $5,000 campaign payment to an Antioch City Councilmember with the intent to influence (1) the Councilmember's efforts to add an item to the City Council agenda regarding Phase 3 of the Aviano project and (2) the Councilmember's vote on a prospective City Council agenda item related to the completion of Phase 3 of the Aviano project." *Id.* ¶ 23.

In plain terms, the Indictment alleged the elements of the crime and a quid pro quo.

## III.    PROCEDURAL HISTORY

On April 3, 2025, a federal grand jury in the Northern District of California returned a two-count Indictment charging D. SANSON and T. SANSON with one count of conspiracy in violation of 18 U.S.C. § 371, one count of bribery concerning programs receiving federal funds and aiding and abetting in violation of 18 U.S.C. §§ 666(a)(2), 2.  Dkt. 1.  On April 22, 2025, the Defendants were arraigned on the Indictment before the Honorable Chief Magistrate Judge Donna M. Ryu and released on bond.  Dkts. 6, 7, 8, 10.  On November 19, 2025, D. SANSON filed a motion to dismiss the Indictment, and a motion hearing was set for March 5, 2026, before the Honorable Yvonne Gonzalez Rogers. Dkt. 32.  On

1   January 9, 2026, T. SANSON filed a motion for joinder as to D. SANSON's motion to dismiss the

2   Indictment.  Dkt. 37.

3   **IV.    LEGAL STANDARD**

4       **A.      A Motion to Dismiss Under Rule 12**

5           For a motion to dismiss under Federal Rule of Criminal Procedure 12(b), a court is limited to the

6   four corners of the indictment, *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002), which "should

7   be read in its entirety, construed according to common sense, and interpreted to include facts which are

8   necessarily implied," *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007) (quoting *United*

9   *States v. King*, 200 F.3d 1207, 1217 (9th Cir. 1999)).  The court must "presume the truth of the

10  allegations in the charging instruments."  *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).

11          "A motion to dismiss the indictment cannot be used as a device for a summary trial of the

12  evidence."  *Id.* (quoting *United States v. Marra*, 481 F.2d 1196, 1199-1200 (6th Cir. 1973)); *see also*

13  *United States v. Sampson*, 371 U.S. 75, 78–79 (1962) ("Of course, none of these charges have been

14  established by evidence, but at this stage of the proceedings the indictment must be tested by its

15  sufficiency to charge an offense.").  In other words, "the issue in judging the sufficiency of the

16  indictment is whether the indictment adequately alleges the elements of the offense and fairly informs

17  the defendant of the charge, not whether the Government can prove its case."  *United States v. Buckley,*

18  689 F.2d 893, 897 (9th Cir. 1982).

19          To that end, an indictment "must be a plain, concise, and definite written statement of the

20  essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  To be sufficient, an

21  indictment must only contain the elements of the charged offense with enough detail to fairly inform the

22  defendant of the charges against him and to enable him to plead double jeopardy.  *United States v.*

23  *Bailey*, 444 U.S. 394, 414 (1980) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  The Ninth

24  Circuit has long held that indictments that merely track the statutory language are sufficient so long as

25  they state all the essential elements of the crime.  *United States v. Crow*, 824 F.2d 761, 762 (9th Cir.

26  1987) ("The use of a 'bare bones' information—that is one employing the statutory language alone—is

27  quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all

28  essential elements of the crime to be punished.").  The government is therefore not required to articulate

1  in the indictment its theory of the case or the evidence supporting the allegations. *Buckley*, 689 F.2d at

2  897 ("The Government need not allege its theory of the case or supporting evidence, but only the

3  essential facts necessary to apprise a defendant of the crime charged.") (internal quotations omitted).

4  **B.  Bribery of a Local Government Official in Violation of 18 U.S.C. § 666(a)(2)**

5  Count One charges D. SANSON and T. SANSON with Conspiracy in violation of 18 U.S.C.

6  § 371, and Count Two charges them with Bribery Concerning Programs Receiving Federal Funds and

7  Aiding and Abetting in violation of 18 U.S.C. §§ 666(a)(2), 2.  Defendants' motions to dismiss rest on a

8  misstatement of the requirements of § 666(a)(2), which covers bribe-payors, arguing that the

9  government is required to allege an explicit quid pro quo when alleging a § 666(a)(2) violation by a

10  bribe payor.  The Defendants argue that the conspiracy and aiding and abetting allegations are

11  insufficiently stated as well because the Indictment supposedly does not allege an explicit quid pro quo.

12  Section 666(a)(2) prohibits any person from "corruptly give[ing], offer[ing], or agree[ing] to give

13  anything of value to any person, with intent to influence or reward an agent of an organization or of a

14  State, local or Indian tribal government, or any agency thereof, in connection with any business,

15  transaction, or series of transactions of such organization, government, or agency involving anything of

16  value of $5,000 or more . . ."  18 U.S.C. § 666(a)(2).

17  Consistent with the language of the statute and the elements of the crime alleged in the

18  Indictment, the elements of a § 666(a)(2) violation are that (1) the defendants gave, offered, or agreed to

19  give a thing of value to another person; (2) the defendants did so corruptly with the intent to influence or

20  reward an agent of a local government in connection with some business, transaction, or series of

21  transactions of the government; (3) this business, transaction, or series of transactions involved a thing

22  with a value of $5,000 or more; and (4) that the local government entity in a one-year period, received

23  benefits of more than $10,000 under any Federal program involving a grant, contract subsidy, loan,

24  guarantee, insurance or other assistance.  *See, e.g.*, *Model Crim. Jury Instr. 7th Cir. (2023); Model Crim.*

25  *Jury Instr. 3rd Cir. (2022).*[1]

26

27

28  _____

[1] There is no Ninth Circuit model jury instruction for violations of 18 U.S.C. § 666.  The Seventh and Third Circuit model instructions are instructive and track the elements of the statute.

1    **V.    ARGUMENT**

2        The government's opposes Defendants' motions on three grounds, each of which independently

3    provides ample basis to defeat Defendants' motions.

4        **A.    The Indictment Comfortably Meets All Pleading Standards, and Defendants Have**

5            **Not and Cannot Credibly Claim Otherwise.**

6        As described in the Legal Standard section above, all that is required to satisfy the requirements

7    of Rule 7(c) is a plain statement of the elements of the charged offense and enough detail to fairly

8    inform a defendant of the charges against him and enable him to plead double jeopardy.  *See Bailey*, 444

9    U.S. at 414.  Regarding the elements of the offense, an indictment need only track the language of the

10   statute to meet the "bare bones" standard.  *See Crow*, 824 F.2d at 762.  The Indictment in this case tracks

11   the language of the statute and no more is required.  *See* Indictment (Dkt. 1) at ¶¶ 19-21 (tracking the

12   language of 18 U.S.C. § 371) and ¶ 23 (tracking the language of 18 U.S.C. § 666(a)(2)).  Though

13   Defendants incorrectly assert that an implied element of a quid pro quo agreement must be alleged, the

14   merits of which are further addressed in the following sections, Defendants' motions fail on a more

15   fundamental level, because they rely almost exclusively on cases that concern what the government *must*

16   *prove at trial*, not what the government *must allege* to meet basic pleading standards.

17       Defendants cite only one case that addresses the sufficiency of Section 666(a)(2) allegations in

18   an indictment, a case from the Northern District of Illinois, *United States v. Donagher*, 520 F. Supp. 3d

19   1034, 1046 (N.D. Ill. 2021).  But the *Donagher* opinion is not relevant authority in this case.  First, as

20   addressed in the next section (V(B)), any holding that the government must allege, or prove, a quid pro

21   quo agreement in a bribe payor case runs contrary to Ninth Circuit authority recently articulated in

22   *United States v. Shen Zhen New World I, LLC*, 115 F.4th 1167, 1213 (9th Cir. 2024), *cert. denied*, 145 S.

23   Ct. 2814 (2025).  Second, the allegations in *Donagher* bear no resemblance to the allegations in this

24   case.  In *Donagher*, the district court found that the indictment not only failed to expressly allege a quid

25   pro quo, with such words as "in exchange for," but it did not even necessarily imply a payment in

26   exchange for an official act.  *Donagher*, 520 F. Supp. 3d at 1045–46.  The district court characterized

27   the allegations as supporting a fair reading of the indictment to be that the "defendants gave their [three

28   charged campaign] contributions with the mere hope that the [public official] would confer favorable

1  treatment."  The court further stated: "This ambiguity is compounded by the fact that they only benefit

2  Defendants are alleged to have received . . . precedes the earliest of the campaign contributions at issue

3  by three years."  *Id*. at 1046.  The vague allegations deemed insufficient in *Donagher* stand in stark

4  contrast to the Indictment here, which expressly, and repeatedly, puts defendants on notice that the

5  payment they offered, and paid, was "in exchange for" specific future official acts by the

6  Councilmember they bribed.  *See* Indictment ¶¶ 1, 16, 21(b).

7          The other cases Defendants cite are post-conviction appeals addressing the sufficiency of the

8  evidence.  And yet, even those cases highlight that the allegations in the Indictment against Defendants

9  lie in the heartland of § 666 territory.  *See, e.g.*, *United States v. Pawlowski*, 27 F.4th 897, 902 (3d Cir.

10  2022) (affirming § 666(a)(1) conviction of bribe receiver mayor and holding that evidence was sufficient

11  where government presented taped conversations between defendant or his consultants and several

12  campaign donors, during which consultants or mayor asked for campaign donations or donors agreed to

13  make donations, and mayor or consultants promised to handle zoning, tax, municipal contract or other

14  issues for donors); *United States v. Siegelman,* 640 F.3d 1159, 1171– 72 (11th Cir. 2011) (affirming

15  § 666 convictions of defendant former governor and defendant hospital corporation CEO and holding

16  that evidence of agreement between the defendants to exchange a seat on state medical board for a

17  campaign donation was sufficient to prove a quid pro quo, explaining that "by 'explicit' *McCormick* did

18  not mean 'express,' . . .  we do not require unambiguous evidence, so long as the jury can infer the

19  content of the quid pro quo" ).  It makes sense that the Defendants principally seek to rely on cases that

20  address the evidence, because the Defendants' purported motions to dismiss actually seek to litigate the

21  merits.

22          The other requirement of an indictment, that it fairly advise a defendant of the charge(s) he faces,

23  is not at issue here either.  Defendants do not assert that the Indictment fails to advise them of the nature

24  of the charges they face.  They know exactly what they have been accused of and have every

25  opportunity to mount a defense to the plain charges.  In fact, Defendants' motions show they are already

26  mounting a defense, as their briefs bear the hallmark of trial briefs, more interested in presenting a

27  counter-narrative than focusing on the allegations in the Indictment.  But that counter-narrative, that the

28  bribe Trent Sanson offered, and David Sanson paid, is not what it appears to be, is irrelevant in

1    connection with a motion to dismiss.  A trial, subject to the Rules of Evidence, is the mechanism to test

2    their defense.

3         The Defendants present their defenses by arguing that D. SANSON and T. SANSON did not

4    know what the other said to the Councilmember, and that the funds were given in different ways on

5    different days, as a donation and then as cash.  But these questions do not go to the sufficiency of the

6    Indictment, they go to the merits.   The Indictment "contains the elements of the offense charged and

7    fairly informs" the Defendants "of the charge against which [they] must defend," and "enables [them] to

8    plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling*, 418 U.S.

9    at 117.  The Defendants' arguments about when and whether D. SANSON and T. SANSON knew about

10   certain payments made to the Councilmember, whether they actually meant for certain payments to be

11   campaign contributions, whether they communicated with each other about the payments, what was

12   meant by certain statements made by the Defendants, whether the Councilmember approached them

13   about the payments, and other factual disputes, have no place in a motion to dismiss.  "A motion to

14   dismiss the indictment cannot be used as a device for a summary trial of the evidence . . . The Court

15   should not consider evidence not appearing on the face of the indictment."  *United States v. Jensen*, 93

16   F.3d 667, 669 (9th Cir. 1996).  "There is no summary judgment procedure in criminal cases.  Nor do the

17   rules provide for a pre-trial determination of the evidence."  *Id.* (quoting *United States v. Critzer*, 951

18   F.2d 306, 307 (11th Cir.1992)) (internal quotation marks omitted).  Defendants' motions to dismiss

19   should be denied.

20   **B.    Bribe Giving in Violation of 18 U.S.C. § 666(a)(2) Does Not Require a Quid Pro Quo.**

21

22        The Ninth Circuit recently squarely addressed Defendants' argument that 18 U.S.C. § 666(a)(2)

23   requires a quid pro quo and held that "when the defendant is the bribe-giver . . . the bribery offense does

24   not require an agreement to enter into a quid pro quo with the public official."  *Shen Zhen New World I,*

25   *LLC*, 115 F.4th at 1213.  In *Shen Zhen*, the Ninth Circuit considered an appeal by a defendant real estate

26   development company convicted of honest-services mail and wire fraud, federal-program bribery, and

27   interstate and foreign travel in aid of racketeering in violation of the Travel Act, for paying bribes to a

28   Los Angeles City Councilmember over a number of years in exchange for favorable treatment in

redeveloping a skyscraper hotel in Los Angeles.

In challenging its conviction under § 666(a)(2) and 18 U.S.C. § 201(b)(1), the defendant argued that the government failed to present sufficient evidence of a quid pro quo.  The Ninth Circuit held that in a bribe-giver case under § 666(a)(2) and § 201(b)(1), there is no quid pro quo requirement and explained as follows:

> In challenging its conviction, [the defendant] conflates the specific intent required of a bribe-giver with that of the *bribe-taker*, *i.e.,* a public official. A public official is guilty of bribery if he agrees to "receive[ ] a thing of value knowing that it was given with the expectation that the official would perform an 'official act' in return."  *McDonnell*, 579 U.S. at 572 . . . .
>
> When the defendant is the *bribe-giver*, however, the bribery offense does not require an agreement to enter into a quid pro quo with the public official . . . , the bribe-giver commits bribery when he "corruptly gives, offers or promises anything of value to any public official" "with intent . . . to influence any official act." . . .  Thus, "[t]he crime of offering a bribe is completed when a defendant expresses an ability and a desire to pay the bribe" . . . .

*Shen Zhen New World I*, 115 F.4th at 1177–78 (holding a defendant offering a benefit to a public official with the intent "to influence any official act" in exchange suffices for federal bribery charges under both Section 666(a)(2) and Section 201(b)(1)).  The court further explained that under *McDonnell*, "a payor defendant completes the crimes of honest-services and federal-funds bribery as soon as he gives or offers payment in exchange for an official act, even if the payee does nothing or immediately turns him in to law enforcement" *id*. at 1177 (quoting *United States v. Suhl,* 885 F.3d 1106 (8th Cir. 2018) (quotation marks omitted), and noted that numerous other circuit courts including the D.C, the Second, the Fourth, the Seventh and the Eight Circuits have all adopted the distinction between the mens rea requirement for a bribe giver and a bribe taker.  *Id*. (compiling cases distinguishing mens rea requirement between bribe-giver and bribe-taker).  The Ninth Circuit has also previously held in a Section 666(a)(1) prosecution of a bribe-taking public official in a case involving campaign contributions that "§ 666 does not require a jury to find a specific quid pro quo."  *United States v. Garrido*, 713 F.3d 985, 997 (9th Cir. 2013) (citing *United States v. McNair*, 605 F.3d 1152, 1187–89 (11th Cir. 2010) (holding that § 666 does not require a quid pro quo)).

*Shen Zhen* constitutes binding authority that disposes of Defendants' argument, with the

Supreme Court denying cert in *Shen Zhen* on the very question of whether a conviction under

§ 666(a)(2) requires a quid pro quo.  The Ninth Circuit's decision aligns with those of its sister circuits

holding that a gift-giver's quid pro quo bribery offense is completed when he gives or offers a gift

corruptly tending to influence an official act.  *See, e.g., United States v. Lindberg*, 39 F.4th 151, 172 (4th

Cir. 2022); *Suhl*, 885 F.3d at 1113 (8th Cir.), *cert. denied*, 586 U.S. 824 (2018); *United States v. Ring*,

706 F.3d 460, 467 (D.C. Cir.), *cert. denied*, 571 U.S. 827 (2013); *United States v. Rasco*, 853 F.2d 501,

505 (7th Cir.), *cert. denied*, 488 U.S. 959 (1988); *see also United States v. O'Donovan*, 126 F.4th 17, 32

(1st Cir. 2025); *United States v. Silver*, 948 F.3d 538, 551 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 656

(2021); *United States v. Shoemaker*, 746 F.3d 614, 623 (5th Cir. 2014); *United States v. Traitz*, 871 F.2d

368, 396 (3d Cir.), *cert. denied*, 493 U.S. 821 (1989); *United States v. Gjieli*, 717 F.2d 968, 976 (6th Cir.

1983), *cert. denied*, 465 U.S. 1101 (1984); *United States v. Johnson*, 621 F.2d 1073, 1076 (10th Cir.

1980).

Defendants nonetheless argue that "the Supreme Court unequivocally has held that a bribery

charge based on the payment of a campaign contribution requires an explicit quid pro quo."  D.

SANSON's Mot. at 7 (citing *McCormick v. United States*, 500 U.S. 257, 273 (1991).  But that is not the

holding of *McCormick*.  At issue in *McCormick* was whether a public official's receipt of alleged

campaign funds constituted Hobbs Act extortion "under color of official right" in violation of 18 U.S.C.

§ 1951(b)(2).  The Court held the receipt of campaign contributions violates the Hobbs Act "only if the

payments are made in return for an explicit promise or undertaking by the official to perform or not to

perform an official act.  In such situations the official asserts that his official conduct will be controlled

by the terms of the promise or undertaking."  500 U.S. at 273.  But § 666 is not mentioned in

*McCormick*.  And the Supreme Court has not extended *McCormick's* explicit quid pro quo requirement

beyond the extortion context.  The Defendants next argue that "following *McCormick*, the Ninth Circuit

has recognized that when the alleged bribe consists of campaign contributions, the *quid pro quo* must

"be clear and unambiguous, leaving no uncertainty about the terms of the bargain."  D. SANSON Mot. at

13 (citing *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992)).  But *Carpenter*, like

*McCormick*, was a Hobbs Act extortion case, and both involved bribe-receivers, not givers.

Defendants are incorrect, particularly in a bribe-payor case like this one, in arguing that the

1    Ninth Circuit "has not yet decided whether the heightened standard in *McCormick* applies to charges

2    under 18 U.S.C. § 666 where, as here, the alleged bribe is a campaign contribution."  D. SANSON Mot.

3    at 13, fn 14.  The Ninth Circuit expressly considered that question, and *McCormick*, in *Shen Zhen*.  In

4    rejecting the defendant's argument that the jury instruction on § 666(a)(2) should have included a quid

5    pro quo requirement, the court explained:

6           It is in the political-contributions context that the Government must prove that a *defendant*
            *public official* received a contribution "in return for an explicit promise or undertaking" to
7           perform or not perform an official act.  *McCormick v. United States*, 500 U.S. 257, 273
            (1991) . . . .  In contrast, the Government here was required to show that a *defendant bribe-*
8           *giver* possessed the "specific intent" to enter a quid pro quo for an official act at the time it
            offered or gave something of value to the public official.  *See Garrido*, 713 F.3d at 996–
9           97 (quoting *Sun-Diamond*, 526 U.S. at 404–05) . . . .

10

11   *Shen Zhen New World I*, 115 F.4th at 1181 (emphasis added).  The Defendants misrepresent and ignore

12   this holding of *Shen Zhen*, and offer no explanation as to why this Court should ignore recent binding

13   Ninth Circuit precedent that directly holds that a quid pro quo is not required in a § 666(a)(2) case, and

14   instead turn to decades-old precedent regarding the Hobbs Act.

15          Defendants' argument that § 666(a)(2) campaign contribution cases require a quid pro quo was

16   not only squarely rejected by the Ninth Circuit, but their argument is also not supported by the cases

17   they cite.  The Defendants cite to *United States v. Correia*, 55 F.4th 12, 31 (1st Cir. 2022) but fail to

18   mention that it involved a bribe-receiver public official who was convicted under § 666(a)(1).

19   Defendants also fail to mention that the First Circuit is among those that distinguish between the *mens*

20   *rea* requirements for bribe-givers and bribe-receivers, such that a § 666(a)(2) case would have been

21   treated differently.  *See O'Donovan*, 126 F.4th at 32.  Defendants' citations to *United States v. Sittenfeld*,

22   128 F.4th 752, 768, 772 (6th Cir. 2025) and *United States v. Blagojevich*, 794 F.3d 729, 738–39 (7th

23   Cir. 2015) are unavailing for the same reasons—the defendants in those cases were the public officials

24   receiving bribes, and both the Sixth and Seventh Circuits also distinguish between the mens rea required

25   for bribe-givers and bribe-receivers.  *See Rasco*, 853 F.2d at 505; *Gjieli*, 717 F.2d at 976.  The only case

26   the Defendants cite that adopts their theory that § 666(a)(2) requires a quid pro quo, is *Donagher*, 520 F.

27   Supp. 3d 1034 (N.D. Ill. 2021), which relies on the same application of *McCormick* that the Ninth

28   Circuit rejected in *Shen Zhen*.

Defendants next mischaracterize the Supreme Court's recent decision in *Snyder v. United States*, 603 U.S. 1 (2024), arguing that it along with *McCormick* requires a quid pro quo in a § 666 prosecution. D. SANSON Mot. at 16.  *Snyder* concerned whether § 666 prohibits public officials (not bribe payors) from accepting *bribes* and /or *gratuities*.  The Supreme Court ultimately held that § 666(a)(1)(B) does not make it a "federal crime for state and local officials to accept *gratuities* for their past official acts." *Id.* at 1954 (emphases added).  *Snyder* was not about whether a bribe-payor case charged pursuant to § 666(a)(2) has a quid pro quo requirement.  Indeed, the Ninth Circuit specifically considered *Snyder* in *Shen Zhen* and noted that "*Snyder* is inapposite, as it concerns an alleged bribe-taker (a local mayor) under 18 U.S.C. § 666(a)(1), not a bribe-giver under § 666(a)(2) . . . *Snyder's* analysis of a public official's criminal liability for receiving gratuities for past official acts is irrelevant to this appeal."  115 F.4th at 1179 n.5.

The other cases the Defendants cite also do not lend them support.  In *United States v. Pawlowski*, another § 666(a)(1) case involving a bribe receiving mayor, the parties agreed to require proof of a quid pro quo while acknowledging "[t]he Supreme Court has yet to extend *McCormick's* explicit quid pro quo requirement beyond the extortion context."  27 F.4th at 902.  The Defendants cite *United States v. Hamilton*, for the proposition that the Circuit court reversed a § 666 conviction because the district court did not require a quid pro quo, but the court's decision hinged on the fact that "the jurors were permitted to convict on an illegal-gratuity theory."  46 F.4th 389, 394 (5th Cir. 2022). Gratuities are not at issue here.  In *United States v. Siegelman*, the court assumed without deciding that a quid pro quo was required in a § 666 prosecution, and found that the jury instruction stating, "the Defendant and official agree[d] that the official will take specific action in exchange for the thing of value," satisfied the quid pro quo requirement.  640 F.3d at 1171– 72.  *United States v. Kaneshiro*, Case No. 22-CR-48, 2023 WL 4236175 (D. Haw. June 28, 2023) and *United States v. Adams*, 760 F. Supp. 3d 6 (S.D.N.Y. 2024) also both involve a bribe-taking public official and prosecutions under § 666(a)(1). Notably, as discussed in greater detail below, both cases also involve an unsuccessful challenge to the sufficiency of an indictment, where courts found that language nearly identical to the language used in the Indictment in this case, was sufficient to satisfy the quid pro quo requirement for a § 666(a)(1) prosecution.

1

2

**C.    The Indictment Plainly and Sufficiently Alleges a Violation of 18 U.S.C. § 666(a)(2), As Well as the Unrequired Quid Pro Quo Element Defendants Assert is Missing.**

3    Although a quid pro quo is not required to prove a violation of 18 U.S.C. § 666(a)(2), the

4    Indictment in this case clearly alleged a quid pro quo.

5    The first paragraph of the Indictment states, "the scheme involved an offer of $10,000 **in**

6    **exchange for** favorable treatment for one of the Development Company's building projects, the Aviano

7    project." Indictment ¶ 21 (emphasis added). The Indictment then goes on to outline the details of the

8    quid pro quo perpetrated by D. SANSON and T. SANSON. The Indictment highlights that on June 12,

9    2024, T. SANSON asked the Councilmember "to place on the Antioch City Council agenda, and vote in

10   favor of, the following item: 'A tract acceptance for Phase 3 at Aviano to release the completion and

11   guarantee bonds . . . .'" *Id.* ¶ 15. The Indictment further alleges that. "T. SANSON asked the

12   Councilmember for the Councilmember's assistance and vote in the hopes that the Antioch City Council

13   would approve release of the bond and effectively override the Antioch Engineering and Development

14   Services Division's position that further work was required by the Development Company to complete

15   its obligations on Phase 3 of Aviano." *Id.* T. SANSON's ask of the Councilmember was the first part of

16   the quid pro quo.

17   In that same conversation with the Councilmember, the Indictment then lays out the second part

18   of the quid pro quo, alleging, "**In exchange for the Councilmember's actions**, T. SANSON told the

19   Councilmember [at that same June 12, 2024, meeting] that he spoke with his father, **D. SANSON, in**

20   **advance of the meeting**, and **D. SANSON was 'willing' to pay the Councilmember $10,000**." *Id.*

21   ¶ 16. (emphasis added). The Indictment then further alleges that "T. SANSON ultimately told the

22   Councilmember that he'd check with D. SANSON to determine if they could pay $5,000 to the

23   Councilmember's IE account and $5,000 in cash." *Id.* Therefore, the Indictment alleges a bribery

24   scheme wherein both T. SANSON and D. SANSON have conspired to bribe the Councilmember.

25   The Indictment then outlines D. SANSON's payment of the bribe of the Councilmember on June

26   20, 2024, which was already offered by T. SANSON. Though not necessary to meet the bare bones

27   allegations of the elements required in an Indictment, the Indictment quotes D. SANSON, including his

28   statements making clear that the bribe he was paying was the same illicit bribe T. SANSON had offered

to pay the Councilmember.  Among other things, the Indictment alleges D. SANSON told the

Councilmember:

- "Anyways, Trent called me and told me that he met with you last week, and I told him OK let me take care of it. I don't want you involved."

- "So, I just want you to know [the payment to the Councilmember's IE is] happening - that it's not just a false commitment or anything like that; and then Trent told me you needed a little extra shot."  D. SANSON then paid the $5,000 cash bribe in the travel coffee mug and referred to the subject of the official acts requested, stating "Yeah – Phase 3 . . . the project has been finished."

Indictment ¶ 17.  Finally Count Two of the Indictment re-iterates the quid pro quo, alleging that T. SANSON "explained that he and D. SANSON were willing to pay the Councilmember $10,000 **in exchange for** the Councilmember's efforts to place on the Antioch City Council agenda, and vote in favor or, '[a] tract acceptance for Phase 3 at Aviano to release the completion and guarantee bond . . . ." *Id*. ¶ 21(b) (emphasis added).

The Supreme Court has defined a quid pro quo as "a specific intent to give or receive something of value **in exchange for** an official act."  *Sun-Diamond*, 526 U.S. at 404-05 (emphasis added).  The "exchange" alleged, three times in the Indictment, "is the essence of quid pro quo bribery."  *United States v. Hernandez,* Case No. No. 20-50012, 2021 WL 3579386 (9th Cir. 2021) (affirming that the implied quid pro quo element in an honest services bribery case was covered by a jury instruction that explained the jury could only convict "if the scheme or plan consists of a bribe or kickback *in exchange* for the defendant's services" (citing *Garrido*, 713 F.3d at 996–97)).  There can be no doubt that the Indictment alleges a quid pro quo.

In fact, the Indictment here alleges a quid pro quo with greater clarity than the indictments that survived motions to dismiss in three of the cases defendants incorrectly assert support their position that a quid pro quo is required in a § 666(a)(2) case, *United States v. Kaneshiro*, 2023 WL 4236175 (D. Haw. June 28, 2023), *United States v. Adams*, 760 F. Supp. 3d 6 (S.D.N.Y. 2024), and *United States v. Benjamin*, 95 F.4th 60 (2d Cir. 2024).

In *Kaneshiro*, the court denied a motion to dismiss a § 666(a)(1) charge against the defendant

1   public official, the Prosecuting Attorney for the City and County of Honolulu, where the indictment

2   alleged that:

> *In exchange for* the campaign contributions given to him by [various individuals] . . . . [the
> defendant city attorney] *would agree to take official action and exercise his authority* as
> the Prosecuting Attorney for the City and County of Honolulu to open an investigation into
> and prosecute former [employee of the individuals who made campaign contributions].

6   2023 WL 4236175 at *5.   The court relied on *Evans v. United States*, 504 U.S. 255 (1992), a case issued

7   one year after *McCormick*, specifically analyzing whether a jury instruction satisfied the *McCormick*

8   quid pro quo requirement.   *Evans* determined that a jury charge satisfied *McCormick's* quid pro quo

9   requirement where the jury was instructed that "if a public official accepts money *in exchange for* [a]

10  specific requested exercise of his or her official power."   2023 WL 4236175 at *5 (quoting *Evans*, 504

11  U.S. at 258, 268–69).   The *Kaneshiro* court further explained that the Supreme Court used the "in

12  exchange for" language to describe the quid pro quo requirement for the federal bribery statute, 18

13  U.S.C. § 201(c)(1), *id.* (citing *Sun-Diamond Growers of Cal.*, 526 U.S. at 404–05), and that the Ninth

14  Circuit approved the "in exchange for" language as expressing the required quid pro quo, id. (citing

15  *Carpenter*, 961 F.2d at 827).

16          In *Adams*, the court denied a motion to dismiss a § 666(a)(1) charge against the defendant mayor,

17  where the indictment alleged that the defendant "intervened with the FDNY to permit the Turkish

18  Consulate to occupy a skyscraper that had not passed a fire safety inspection, *in exchange for*, among

19  other things, luxury travel benefits provided by the Turkish Official and the Airline Manager" and

20  "pressure[ed] the [FDNY] to facilitate the opening of a new Turkish consular building . . . *[i]n*

21  *exchange for* free travel and other travel-related bribes in 2021 and 2022."   760 F. Supp. 3d at 26

22  (internal quotation marks omitted).   The court reasoned, "this 'in exchange for' language is sufficient to

23  allege an agreement."   *Id.*

24          The Defendants also cite *Benjamin*, but there the Second Circuit reversed the district court's

25  dismissal of an indictment in a § 666(a)(1) prosecution of a bribe receiver where the indictment

26  adequately alleged a quid pro quo.   95 F.4th at 73 – 74.   The indictment alleged in part that: "From at

27  least in or about 2019, up to and including at least in or about 2021 . . . the defendant, participated in a

28  scheme to obtain campaign contributions from a real estate developer . . .  in exchange for [the

1  Defendant's] agreement to use, and actual use of, his official authority and influence as a New York

2  State senator to obtain a $50,000 grant of state funds [for Organization-1], " and "[the defendant]

3  solicited and received campaign contributions from [the real estate developer] in exchange for [the

4  defendant's] agreement to use, and actual use of, his official authority and influence to obtain the State

5  Grant for Organization-1." *Id.* at 73.  The court held that the "in exchange for" language sufficed.  *Id.* at

6  74.

7       The allegations in the Indictment are at least as specific as those in the *Kaneshiro*, *Adams,* and

8  *Benjamin* cases.  The Indictment clearly alleges that D. SANSON and T. SANSON offered to give the

9  Councilmember $10,000 in exchange for the Councilmember placing on the Antioch City Council

10 agenda and voting in favor of "a tract acceptance for Phase 3 at Aviano to release the completion and

11 guarantee bonds," in contravention of the Antioch Engineering and Development Services position.[2]

12 //

13 //

14 //

15 //

16 

17      [2] The Defendants also, without any factual support or basis, allege that the government provided
the grand jury with erroneous instructions as to the requirements of 18 U.S.C. § 666 and accordingly
18 move that the indictment be dismissed, and in a footnote, request that the grand jury transcript be
released.  D. SANSON's Mot. at 22 – 24.  But the request for grand jury instructions is admittedly and
19 necessarily derivative of the merits of Defendants' motions, which should be denied for the reasons
already expressed, including the fact that the Indictment alleges a quid pro quo.  The Defendants have
20 no basis to obtain any instructions provided to the grand jury.  To obtain grand jury transcripts under
Federal Rule of Criminal Procedure 6(e)(3)(C)(i), a defendant must demonstrate a "particularized need"
21 outweighing the policy of grand jury secrecy.  *Dennis v. United States*, 384 U.S. 855, 870 (1966);
*United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986).  More than a desire for a "fishing
22 expedition" is required.  *United States v. Kim*, 577 F.2d 473, 478 (9th Cir.1978); *Walczak*, 783 F.2d at
857 (holding that defendant was not entitled to grand jury transcript because his stated reasons of
23 showing that the grand jury had no evidence that district court had jurisdiction to prosecute, and to
determine whether testimony of law enforcement officers improperly summarized testimony of other
24 agents, did not constitute "particularized need," because his stated reasons were not supported by fact
and were "speculative"); *see also United States v. Gambina*, 988 F.2d 123, *10 (9th Cir. 1993)
25 (affirming denial of disclosure of grand jury transcript because defendant alleged no fact to support his
stated reason for wanting to see transcript).  The Defendants have made no showing whatsoever as to
26 what instructions were offered to the grand jury, and their speculations border on frivolous.  The Court
should accordingly deny the Defendants' request for the grand jury transcripts, for the reasons it should
27 deny their motions in the first instance, and to protect the well-established secrecy of grand jury
proceedings.  To the extent the Court contemplates any other result, which it should decline to do, based
28 on Defendants' speculation and the merits of their motions, the government requests the opportunity to
further brief the release of the grand jury transcript.

1

## VI.     CONCLUSION

2          For the reasons set forth above, the Court should deny Defendants' motions to dismiss.

3

4

5    DATED: January 29, 2026                          Respectfully submitted,

6                                                     CRAIG H. MISSAKIAN
                                                      United States Attorney
7

8
                                                      /s/      *Ivana Djak*
9                                                     THOMAS R. GREEN
                                                      BENJAMIN K. KLEINMAN
10                                                    IVANA DJAK
                                                      Assistant United States Attorneys
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28