GIBSON, DUNN & CRUTCHER LLP
WINSTON Y. CHAN, SBN 214884
   wchan@gibsondunn.com
JINA L. CHOI, SBN 326935
   jchoi@gibsondunn.com
DUNCAN TAYLOR, SBN 300145
   dtaylor@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, California 94111-3715
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant*
*DAVID SANSON*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:25-CR-00090-YGR |
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT** |
| v. | |
| DAVID SANSON and TRENT SANSON, | Date:        March 5, 2026 |
| Defendants. | Time:        2:00 p.m. |
| | Courtroom:    1 |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   ARGUMENT ...................................................................................................................... 1

   A.   The Government Must Plead an Explicit *Quid Pro Quo* to Establish a Violation of 18
        U.S.C. § 666(a)(2) Based on Campaign Contributions.................................................. 1

        i.    *McCormick* Applies to Bribery Cases Beyond the Hobbs Act. ..................................... 2

        ii.   The Government's Reliance on *Shen Zhen* Is Misplaced. ............................................. 2

        iii.  The Government's Distinction Between Alleged Bribe-Givers and Bribe-Takers Is
              Irrelevant Under *McCormick*. ................................................................................. 3

        iv.   The Model Jury Instructions the Government Cites Support Mr. Sanson. ................. 6

        v.    The Government's Position Is Opportunistic and Lacks Credibility. ........................... 7

   B.   The Government Should Produce Grand Jury Materials. ...................................................... 8

   C.   The Government Must Do More Than Plead the Statutory Elements in 18 U.S.C.
        § 666(a)(2) to Survive a Motion to Dismiss. ............................................................... 10

   D.   Read As a Whole, the Indictment Fails to Plead the Requisite Explicit *Quid Pro Quo*. .... 12

III.  CONCLUSION .................................................................................................................... 15

GIBSON, DUNN &
CRUTCHER LLP

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT
CASE NO. 4:25-CR-00090-YGR

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Nova Scotia v. United States*,
    487 U.S. 250 (1988) ................................................................................................................8

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ...................................................................................................................4

*City of Arcadia v. EPA*,
    265 F. Supp. 2d 1142 (N.D. Cal. 2003) ................................................................................12

*Dennis v. United States*,
    384 U.S. 855 (1966) ..............................................................................................................10

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,
    441 U.S. 211 (1979) ................................................................................................................9

*McCormick v. United States*,
    500 U.S. 257 (1991) ............................................................................................................1, 3

*McCutcheon v. FEC*,
    572 U.S. 185 (2014) ............................................................................................................3, 4

*Russell v. United States*,
    369 U.S. 749 (1962) ..............................................................................................................11

*United States v. Allinson*,
    2018 WL 3618257 (E.D. Pa. July 30, 2018) ..........................................................................7

*United States v. Baker*,
    2021 WL 12364650 (E.D. Ark. Jan. 21, 2021) ......................................................................7

*United States v. Belton*,
    2015 WL 1815273 (N.D. Cal. Apr. 21, 2015) ........................................................................9

*United States v. Benjamin*,
    95 F.4th 60 (2d Cir. 2024) ....................................................................................................15

*United States v. Berger*,
    473 F.3d 1080 (9th Cir. 2007) ..............................................................................................12

*United States v. Carpenter*,
    961 F.2d 824 (9th Cir. 1992) ....................................................................................11, 12, 13

*United States v. Comey*,
    2025 WL 3202693 (E.D. Va. Nov. 17, 2025) ......................................................................10

*United States v. Donagher*,
    520 F. Supp. 3d 1034 (N.D. Ill. 2021) ..........................................................................4, 5, 11

*United States v. Du Bo*,
    186 F.3d 1177 (9th Cir. 1999) ................................................................................................9

GIBSON, DUNN & CRUTCHER LLP

ii

*United States v. Fuentes*,
  2008 WL 2557949 (E.D. Cal. June 24, 2008)...................................................................9

*United States v. Gambina*,
  988 F.2d 123 (9th Cir. 1993)...........................................................................................10

*United States v. Garrido*,
  713 F.3d 985 (9th Cir. 2013)..............................................................................................3

*United States v. Igbinovia*,
  2025 WL 2549165 (D. Nev. Sept. 3, 2025) ....................................................................10

*United States v. Jensen*,
  93 F.3d 667 (9th Cir. 1996)..............................................................................................12

*United States v. Kaneshiro*,
  2023 WL 4236175 (D. Haw. June 28, 2023) ............................................................4, 5, 15

*United States v. Kim*,
  577 F.2d 473 (9th Cir. 1978).............................................................................................10

*United States v. McGregor*,
  2012 WL 13042154 (M.D. Ala. Feb. 29, 2012)..............................................................13

*United States v. Pac. Gas & Elec. Co.*,
  2015 WL 3958111 (N.D. Cal. June 29, 2015) ................................................................10

*United States v. Pawlowski*,
  27 F.4th 897 (3d Cir. 2022)............................................................................................5, 7

*United States v. Prentiss*,
  206 F.3d 960 (10th Cir. 2000)............................................................................................9

*United States v. Resendiz-Ponce*,
  549 U.S. 102 (2007)..........................................................................................................11

*United States v. Sells Eng'g*,
  463 U.S. 418 (1983)............................................................................................................8

*United States v. Shen Zhen New World I, LLC*,
  115 F.4th 1167 (9th Cir. 2024)......................................................................................2, 5

*United States v. Siegelman*,
  640 F.3d 1159 (11th Cir. 2011)..........................................................................................5

*United States v. Walczak*,
  783 F.2d 852 (9th Cir. 1986)............................................................................................10

*United States v. Way*,
  2015 WL 8780540 (E.D. Cal. Dec. 15, 2015)...............................................................8, 9

**Statutes**

18 U.S.C. § 666(a)(2)..............................................................1, 2, 4, 5, 6, 7, 9, 10, 11, 15

18 U.S.C. § 1951(b)(2)....................................................................................................................2

**Rules**

Fed. R. Crim. P. 6(e)(3)(E)(ii) .......................................................................................................8

Fed. R. Crim. P. 12(b)(3)(A)(v) ...................................................................................................15

Fed. R. Crim. P. 12(b)(3)(B)(v) ...................................................................................................15

**Constitutional Provisions**

U.S. Const. amend. I ...................................................................................1, 2, 3, 4, 7, 9, 10

**Other Authorities**

Letter from Emil Bove III, Acting Deputy Attorney General, to Danielle Sassoon,
  Acting U.S. Attorney (Feb. 13, 2025) .....................................................................................7

GIBSON, DUNN &
CRUTCHER LLP

## I.    INTRODUCTION

The Government's Opposition confirms what Defendant David Sanson's Motion to Dismiss established: that the Government obtained from the grand jury a legally flawed indictment that charged Mr. Sanson with bribery arising from a campaign contribution without ever finding and alleging an explicit *quid pro quo*.  Rather than grapple with *McCormick v. United States*, 500 U.S. 257, 273 (1991), and its progeny, the Government attempts to gloss over its fundamental legal error by misconstruing Ninth Circuit precedent and pointing to a legally irrelevant distinction between alleged bribe-givers and bribe-takers.  Ultimately, as the Opposition all but concedes, the Government never pleaded in the Indictment—and never instructed the grand jury as to—the explicit *quid pro quo* required when bribery charges rest on campaign contributions.  That omission is not a mere technicality; the Government's failure caused the grand jury to return an indictment that is a legal nullity.  Worse still, the Government's position that it need not plead an explicit *quid pro quo* criminalizes the exercise of First Amendment rights core to our democratic system.  The Court should dismiss the Indictment.

## II.    ARGUMENT

**A.  The Government Must Plead an Explicit *Quid Pro Quo* to Establish a Violation of 18 U.S.C. § 666(a)(2) Based on Campaign Contributions.**

The Government never argues that the payment Mr. Sanson allegedly made to the Councilmember was not a campaign contribution.  *See, e.g.*, Opposition Brief ("Opp.") at 3 ("the implication" of paragraph seventeen of the Indictment was "that [Mr. Sanson] was going to donate to the Councilmember's campaign"); *see also* Indictment ¶¶ 9–10.  As such, the Supreme Court's guidance in *McCormick* applies and the Government must plead an explicit *quid pro quo* to support its bribery charge under Section 666(a)(2).  500 U.S. at 273.

The Government disputes this, contending incorrectly that *McCormick* does not apply to bribery charges under Section 666(a)(2) and that the Ninth Circuit "expressly considered" and rejected the *McCormick* holding for charges under Section 666(a)(2) where the alleged bribe takes the form of a campaign contribution.  Opp. at 11–12.  This argument is deeply flawed, as it both completely disregards the Supreme Court's reasoning in *McCormick* (and a long line of cases

applying it, cited by Mr. Sanson in his Opening Brief) establishing that heightened First Amendment protections apply when the Government seeks to charge bribery based on campaign contributions, as well as relies on a severe misreading of the Ninth Circuit's decision in *United States v. Shen Zhen New World I, LLC*, 115 F.4th 1167, 1180–81 (9th Cir. 2024).

i.    *McCormick* Applies to Bribery Cases Beyond the Hobbs Act.

The Government argues that *McCormick* is a "decades-old precedent" whose holding is limited to Hobbs Act extortion charges under 18 U.S.C. § 1951(b)(2).  Opp. at 11–12.  This position is puzzling given the many cases, including Ninth Circuit decisions, extending the *McCormick* standard to cases beyond Hobbs Act extortion, as Mr. Sanson argued in his Opening Brief.  *See* Motion to Dismiss ("Mot.") at 14–15 (citing cases).  That courts have regularly applied *McCormick* to bribery charges premised on campaign contributions makes sense, as *McCormick*'s focus on protecting core First Amendment rights applies with equal force to all theories of bribery regardless of the charging statute.  Yet instead of addressing the substance of the Supreme Court's ruling in *McCormick*, or the raft of cases applying *McCormick* to various bribery statutes, including Section 666, the Government seeks to side-step this body of caselaw entirely by mischaracterizing the Ninth Circuit's opinion in *Shen Zhen*.

ii.    The Government's Reliance on *Shen Zhen* Is Misplaced.

The Government makes the mistaken assertion that the Ninth Circuit in *Shen Zhen* "expressly considered" and rejected *McCormick* for charges under Section 666(a)(2) where the alleged bribe takes the form of a campaign contribution.  *E.g.*, Opp. at 12 (Defendants' argument that charges under Section § 666(a)(2) predicated on campaign contributions require an explicit *quid pro quo* was "squarely rejected by the Ninth Circuit" in *Shen Zhen*).  But that is not the holding of *Shen Zhen*.  Instead, in *Shen Zhen*, the Ninth Circuit declined to apply the *McCormick* rule *because there was no campaign contribution at issue*.  *Shen Zhen*, 115 F.4th at 1180–81 ("Shen Zhen's benefits to Huizar were indisputably not political campaign contributions and Huang—as a foreign national—was barred from making any direct or indirect campaign contributions." (emphasis omitted)).  Rather than dismiss *McCormick*'s explicit *quid pro quo* requirement, the Ninth Circuit repeatedly acknowledged that bribery charges involving campaign contributions *are*

*in fact different* and entitled to unique protections under the First Amendment. *See id.* at 1180 ("[P]olitical campaign contributions enjoy unique First Amendment protections that stand in contrast to federal laws 'preventing *quid pro quo* corruption.'" (citing *Citizens United v. FEC*, 558 U.S. 310, 361 (2010))); *id.* at 1181 ("It is in the political-contributions context that the Government must prove that a defendant public official received a contribution 'in return for an explicit promise or undertaking' to perform or not perform an official act." (citing *McCormick*, 500 U.S. at 273)); *id.* ("The line between *quid pro quo* corruption and general influence may seem vague at times, but the distinction must be respected in order to safeguard basic First Amendment rights." (citing *McCutcheon v. FEC*, 572 U.S. 185, 209 (2014))).

The Government's citation to the Ninth Circuit's decision in *United States v. Garrido*, 713 F.3d 985, 997 (9th Cir. 2013), is also unavailing. *See* Opp. at 10. There, a jury convicted a city treasurer under Section 666(a)(1) for soliciting personal gifts, a $350,000 per year no-show consulting job, and payments, only some of which were campaign contributions, as part of a waste-hauling contract scheme. 713 F.3d at 989–92, 91 n.5. But the defendant in *Garrido* focused his argument on the fact that he did not have authority to approve the contract at issue. *Id.* at 999. He never argued that an explicit *quid pro quo* was required because the "thing of value" was a campaign contribution—understandably, given the varied nature of the alleged bribes paid—and the Ninth Circuit did not consider the issue. *See id.* at 999–1002. In fact, the Ninth Circuit did not even reference *McCormick* in its ruling, let alone discuss whether an explicit *quid pro quo* is required for bribery charges involving campaign contributions. *See generally id.*

      iii.    The Government's Distinction Between Alleged Bribe-Givers and Bribe-Takers Is Irrelevant Under *McCormick*.

To explain away the necessity of pleading an explicit *quid pro quo* in the Indictment, the Government points to a legally irrelevant and logically unsound distinction between alleged bribe-givers and bribe-takers when campaign contributions are involved. *See* Opp. at 1, 10–13. In particular, the Government argues it need not plead any *quid pro quo* where it charges bribery against a bribe-giver, as opposed to a public official bribe-taker, because a "gift-giver's quid pro quo bribery offense is completed when he gives or offers a gift corruptly tending to influence an

official act." *Id.* at 11. This argument fails because the distinction the Government attempts to draw is distinct from and irrelevant to whether the heightened standard from *McCormick* applies.

Nothing in *McCormick* or its progeny suggests the Supreme Court's reasoning is confined to prosecutions of alleged public official bribe-takers. Such a limitation would make little sense, as there is no principled basis to afford a heightened *quid pro quo* requirement to protect a public official's First Amendment interests while denying the same protection to a constituent making campaign contributions. Instead, "what animated the Court's analysis [in *McCormick*] was concern about criminalizing everyday interactions between politicians *and their constituents.*" *United States v. Donagher*, 520 F. Supp. 3d 1034, 1043 (N.D. Ill. 2021) (emphasis added). If anything, a constituent's right to donate to public officials strikes even closer to the heart of the First Amendment. *See McCutcheon*, 572 U.S. at 203 ("When an individual contributes money to a candidate, he exercises" his First Amendment "right to participate in the public debate through political expression and political association."); *see also Buckley v. Valeo*, 424 U.S. 1, 24–25 (1976) (campaign contributions implicate "the contributor's freedom of political association" under the First Amendment).

The Government's theory that *McCormick* applies only to public official bribe-takers is without support. It does not cite a single case where a court has declined to extend *McCormick* on the grounds that the defendant was an alleged bribe-giver rather than an alleged bribe-taker. Of the ten cases the Government string cites in support of its position, *see* Opp. at 11, nine do not even involve campaign contributions (and three of those pre-date *McCormick*). The remaining case, *U.S. v. Lindberg*, does not cite or otherwise consider *McCormick*. 39 F.4th 151, 172 (4th Cir. 2022).[1] The Government also ignores that courts *have* applied *McCormick* to cases against alleged bribe-givers, including under Section 666(a)(2). *See, e.g., United States v. Kaneshiro*, 2023 WL 4236175, at *5–6 (D. Haw. June 28, 2023); *Donagher*, 520 F. Supp. 3d at 1044.

---

[1] Although the court in *Lindberg* did not consider whether the heightened *McCormick* standard applied to the Section 666(a)(2) charges at issue because the defendant did not raise the issue, it nonetheless held that the government docent must prove that the defendant "ma[de] a payment or promise with the intent to engage in a *fairly specific* quid pro quo with that official." 39 F.4th at 172.

4

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT
CASE NO. 4:25-CR-00090-YGR

Nor can the Government meaningfully distinguish the district and circuit court decisions applying *McCormick*'s principles for prosecutions under Section 666. *See* Mot. at 14–15 (citing cases).[2] The Government particularly lacks any serious answer for *Donagher*, where the district court concluded that an explicit *quid pro quo* is an essential element of Section 666(a)(2) when the violation is based on alleged campaign contributions. 520 F. Supp. 3d at 1043. The Government's attempt to distinguish *Donagher* on the basis of the indictment's allegations does not diminish the relevance of its holding. Opp. at 7–8. The court in *Donagher* held that an explicit *quid pro quo* must be alleged under *McCormick* for charges under Section 666(a)(2); the particular circumstances of the campaign contribution at issue say nothing about the baseline legal requirement of an explicit *quid pro quo* against which to measure those circumstances. *See id.* at 7. And, as explained above, *Shen Zhen* in no way forecloses application of *McCormick*'s explicit *quid pro quo* requirement to Section 666(a)(2) charges.

The Government's repeated reliance on the distinction between alleged bribe-givers and bribe-takers only highlights the serious faults in the Indictment. Although the Government criticizes Mr. Sanson's citation to cases addressing Section 666(a)(1)(B), the "bribe-taker" prong, *see* Opp. at 12–13, Mr. Sanson's citation to this body of cases is proper and sensible. *See, e.g.*, *Kaneshiro*, 2023 WL 4236175, at *3 n.2 (concluding that *McCormick* applies to bribe-giver and bribe-taker prongs of Section 666). Indeed, prosecutions under Section 666(a)(2), the "bribe-giver" prong at issue here, are virtually non-existent where campaign contributions are involved, leaving a limited body of case law. That courts have more frequently had a reason to apply *McCormick* to one subsection of Section 666 does not logically create a limiting principle barring *McCormick*'s application to the statute's other subsections.

---

[2] The Government contends that *United States v. Pawlowski*, 27 F.4th 897, 902 (3d Cir. 2022), and *United States v. Siegelman*, 640 F.3d 1159, 1171–72 (11th Cir. 2011), do not "lend [Mr. Sanson] support," because in each case, the court purportedly assumed without deciding that an explicit *quid pro quo* was required. But the court in *Pawlowski* assumed an explicit *quid pro quo* was required because the Government *agreed* that it was, 27 F.4th at 902, and the court in *Siegelman* did not simply "assume[] without deciding that a *quid pro quo* was required," as the DOJ misleadingly claims in its Opposition. Opp. at 13. Rather, the Eleventh Circuit in *Siegelman* carefully reviewed *McCormick*'s explicit *quid pro quo* requirement and determined that the jury instructions given "would satisfy *McCormick*'s requirement for an explicit agreement involving a *quid pro quo*," such that there was no reversible error. 640 F.3d at 1172.

That scarcity is not merely academic, and highlights the unusual and troubling features of this case: while the Government often punishes public officials for abusing their power to demand campaign contributions from constituents explicitly in exchange for official acts, it does not ordinarily recruit a sitting public official (and leverage that official's power over constituents) to demand campaign contributions from constituents and then attempt to recharacterize those campaign contributions as bribes.  Indeed, the Government does not deny that the Councilmember first raised the subject of Mr. Sanson's planned campaign contributions only *after* Trent Sanson purportedly discussed issues affecting DeNova's development projects.  *See* Mot. at 2, 5 n.8.  Nor does it dispute that the Councilmember did so while acting as a Government agent.  *Id*. at 21–22.

iv.    The Model Jury Instructions the Government Cites Support Mr. Sanson.

The Government's reliance on model jury instructions does not advance its claim that an explicit *quid pro quo* need not be pled.  As an initial matter, the Government mistakenly reports that the Ninth Circuit lacks a model jury instruction for violations of 18 U.S.C. § 666(a)(2).  *Compare* Opp. at 6 n.1, *with* Model Crim. Jury Instr. 9th Cir. (2022) at 605.  But that instruction is silent as to the *quid pro quo* requirement and offers no applicable commentary.  Nor is there anything remarkable about the absence of a specialized requirement in this or any other circuit's model jury instructions, which are generically designed to cover the mine-run of cases, given the limited instances of Section 666 prosecutions involving campaign contributions.  *See supra* Section II.A.iii.  In any event, the instructions the Government does cite support Mr. Sanson's argument that the Government must plead more than the stated elements of Section 666(a)(2).  The Government conspicuously omits that the note to the Seventh Circuit's model instructions recommends that "[i]n a case involving campaign contributions as the alleged thing of value," courts should consider giving an "additional instruction" distinguishing lawful campaign contributions from illegal bribes, and directs readers to the instructions and comments for Hobbs Act extortion that discuss *McCormick*'s explicit *quid pro quo* requirement.  Model Crim. Jury Instr. 7th Cir. (2023) at 307 & 789.  In addition, the Third Circuit's instructions cited by the Government do not address campaign contribution cases, whereas the commentary underscores that "[q]uestions remain" about whether the statute requires proof of a *quid pro quo*.  Model Crim. Jury Instr. 3d Cir.

GIBSON, DUNN &
CRUTCHER LLP

6

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT
CASE NO. 4:25-CR-00090-YGR

(2022), Ch. 6 at 21.[3]

v. The Government's Position Is Opportunistic and Lacks Credibility.

Finally, the Government's argument that it need not plead an explicit *quid pro quo* lacks credibility where the Government has repeatedly taken the opposite position in other cases, including in cases against alleged bribe-givers under Section 666(a)(2). *See Pawlowski*, 27 F.4th at 902 ("the parties agreed" to require proof of an explicit *quid pro quo*); *United States v. Allinson*, 2018 WL 3618257, at *5 (E.D. Pa. July 30, 2018) ("the parties agree . . . an explicit quid pro quo is required" under Section 666(a)(2)); *United States v. Baker*, 2021 WL 12364650 (E.D. Ark. Jan. 21, 2021) (stating in opposition to motion to dismiss indictment charging Section 666(a)(2) that "[t]he United States agrees with [defendant] that in federal prosecutions involving a campaign contribution bribe, the attempted *quid pro quo* must be explicit").

Indeed, the Government—through the office of its then-second-highest ranking official—has invoked *McCormick* and its First Amendment protections to justify dismissal of a recent, high-profile case involving bribery allegations that the Government cited in its own Opposition. *See* Letter from Emil Bove III, Acting Deputy Attorney General, to Danielle Sassoon, Acting U.S. Attorney (Feb. 13, 2025), *accessible at https://www.presidency.ucsb.edu/documents/letter-from-acting-deputy-attorney-general-emil-bove-iii-us-attorney-for-the-southern* (justifying dismissal of charges under Section 666 against former New York City mayor Eric Adams and arguing that "[t]he case turns on factual and legal theories that are, at best, extremely aggressive. . . The 'thing[s] of value' in this case are campaign contributions, which require heightened proof under *McCormick*, as the office knows from the challenges you encountered in connection with the decision to dismiss the *Benjamin* case."). The Government cannot decide to apply the heightened *McCormick* standard only when convenient for its desired end, or depending on which courthouse the Government finds itself in. Nor should the applicability of *McCormick*, and the core First Amendment protections it affords, turn on the Government's whims. For this reason, too, the Indictment should be dismissed.

---

[3] And while the Eleventh Circuit's instructions commentary states that a *quid pro quo* instruction is not required, the Fifth Circuit's instructions include it, further minimizing the probative value of this category of authority. *Compare* Model Crim. Jury Instr. 11th Cir. (2025) at 198–199 (leaving open unresolved implications of Supreme Court precedent), *with* Model Crim. Jury Instr. 5th Cir. (2024) at 183 (violations of Section 666 require a *quid pro quo*).

### B.  The Government Should Produce Grand Jury Materials.

The Government's Opposition underscores additional defects in the process that led to Mr. Sanson's indictment.  The Government effectively concedes that it failed to properly instruct the grand jury that an explicit *quid pro quo* is required under *McCormick* for violations of Section 666 when campaign contributions are purportedly offered.  Indeed, it repeatedly argues that it was not required to charge a *quid pro quo* between Mr. Sanson and the Councilmember in the Indictment, let alone an explicit one.  *See, e.g.*, Opp. at 1, 9, 14–15.  The only plausible conclusion from these representations is that the Government did not instruct the grand jury that it was required to find an explicit *quid pro quo* between Mr. Sanson and the Councilmember to return a true bill.  *See* Mot. at 23–24.  This alone justifies the production of the grand jury instructions.

A court may authorize disclosure of grand jury materials "at the request of a defendant who shows that a ground *may exist* to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii) (emphasis added).   The Supreme Court has construed this Rule to require "a strong showing of particularized need for grand jury materials before any disclosure will be permitted."  *United States v. Sells Eng'g*, 463 U.S. 418, 442–43 (1983).  A showing of "particularized need" requires that the party requesting disclosure show that (1) the material sought is necessary to "avoid a *possible* injustice in another judicial proceeding," (2) "the need for disclosure is greater than the need for continued secrecy," and (3) the "request is structured to cover only material so needed."  *Id*. at 443 (citation omitted and emphasis added).

Those conditions are plainly met here.  Even though the showing described above does not require proof of grand jury impropriety—only a basis to believe it may have occurred—the Government has all but conceded that it failed to instruct the grand jury on all elements of the charges against Mr. Sanson.  *See, e.g.*, Opp. at 9–12; *see also supra* Section II.A.ii.  Disclosure of the grand jury instructions is thus necessary to ensure that this error did not "substantially influence[] the grand jury's decision to indict."  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988); *see, e.g.*, *United States v. Way*, 2015 WL 8780540, at *6 (E.D. Cal. Dec. 15, 2015) (ordering disclosure of grand jury materials even where indictment tracked the statute because of ambiguity of the *mens rea* element).  Absent an instruction on the requirement of an explicit *quid*

*pro quo*, the grand jury could have indicted Mr. Sanson based solely on First Amendment-protected activity. *See United States v. Prentiss*, 206 F.3d 960, 964, 976 (10th Cir. 2000), *modified en banc*, 256 F.3d 971 (10th Cir. 2001) (a central purpose of an indictment is to ensure that the grand jury finds probable cause that the defendant has committed every element of the offense); *see also United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (indictment's omission of implicit element meant that "[w]e may only guess whether the grand jury received evidence of, and actually passed on, [defendant's] intent."). This is exactly the kind of result the Supreme Court sought to avoid in creating the heightened requirement in *McCormick*.

The remaining requirements are also easily satisfied. The need for disclosure outweighs any need for secrecy, as the factors weighing in favor of secrecy are at a nadir here, where the grand jury has completed its investigation and returned an indictment. *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979) ("[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."); *Way*, 2015 WL 8780540, at *5 ("[W]here the grand jury has concluded its investigation . . . there are no security concerns to jurors or witnesses"). The legal instructions Mr. Sanson seeks are also ministerial in nature, and thus subject to lesser secrecy protections. *See, e.g.*, *United States v. Belton*, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015) (legal instructions "do not reveal the substance of the grand jury's deliberative process or other information . . . that Rule 6 seeks to protect."); *United States v. Fuentes*, 2008 WL 2557949, at *4 (E.D. Cal. June 24, 2008) (concluding defendants "[were] entitled to" transcript of grand jury instructions and charges even without showing particularized need). Finally, the request Mr. Sanson makes is narrowly tailored and encompasses only the instructions the Government provided to the grand jury concerning the elements of Section 666(a)(2). *See* Mot. at 24 n.17.

None of the Government's arguments support withholding the grand jury instructions. Contrary to the Government's dismissive claims, Mr. Sanson's request is not a "fishing expedition" based on pure "speculation." Opp. at 17 n.2. The Government never claims it instructed the grand jury that it must find that Mr. Sanson and the Councilmember engaged in an explicit *quid pro quo* under Section 666(a)(2), and the resulting Indictment correspondingly contains no such allegation.

*See id.*; Mot. at 17–21. That failure leaves open the question of whether the grand jury chose to indict Mr. Sanson based on something other than an explicit *quid pro quo*. *See United States v. Igbinovia*, 2025 WL 2549165, at *3 (D. Nev. Sept. 3, 2025) (dismissing indictment where the omission of an essential element to the offense "indicates that the grand jury may not have considered or been presented facts regarding [defendant's] subjective intent.").[4]

Finally, none of the Government's cited cases preclude disclosure of grand jury instructions in the circumstances here, where a defendant seeks narrowly tailored ministerial materials based on the government's claims that it was not obligated to plead all elements of the charged offense. *Cf. Dennis v. United States*, 384 U.S. 855, 870 (1966) (holding petitioners were not entitled to examine grand jury minutes relating to trial testimony of witnesses); *United States v. Kim*, 577 F.2d 473, 478 (9th Cir. 1978) (defendant not entitled to entire transcript of proceedings where government voluntarily furnished prior grand jury testimony of trial witnesses); *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (suspicion that grand jury transcripts would provide impeachment material did not justify disclosure); *United States v. Gambina*, 988 F.2d 123, at *10 (9th Cir. 1993) (similar). The Government's claim that Mr. Sanson's request for grand jury instructions is "frivolous" similarly carries no weight. *See* Opp. at 17 n.2. There is nothing "frivolous" in ensuring that the Government adhered to the demands of the grand jury process and that the grand jury did not disregard core First Amendment rights—particularly where all signs indicate the Government did not so adhere and it fails to assert otherwise. *See United States v. Comey*, 2025 WL 3202693, at *7, *11 (E.D. Va. Nov. 17, 2025) (highlighting "fundamental misstatements of the law that could compromise the integrity of the grand jury process.").

**C. The Government Must Do More Than Plead the Statutory Elements in 18 U.S.C. § 666(a)(2) to Survive a Motion to Dismiss.**

The Government's argument that it need only plead the statutory elements of Section 666(a)(2) does not somehow cure the Indictment or failures during the grand jury proceedings.

---

[4] In any event, Mr. Sanson does not object to the Court examining the instructions *in camera* to preliminarily determine if disclosure is warranted. *See United States v. Pac. Gas & Elec. Co.*, 2015 WL 3958111, at *13 (N.D. Cal. June 29, 2015) (reserving decision on whether to order production of grand jury instructions until after conducting an *in camera* review).

Opp. at 5–6. There is no dispute that Section 666(a)(2), as written, does not include language referring to a *quid pro quo*, but that is not dispositive. *See Donagher*, 520 F. Supp. 3d at 1046 (dismissing Section 666(a)(2) charge for failure to allege explicit *quid pro quo* as required under *McCormick*); *supra* Section II.A. As Mr. Sanson argued in his Opening Brief, the Government must plead all requisite elements in a statute even if they are not expressly stated in the charging statute. *See* Mot. at 9–10.

The Government has no answer to this argument, so it merely ignores or mischaracterizes the authority Mr. Sanson cites in support thereof. It wholly ignores the Supreme Court authority cited by Mr. Sanson in his Motion. *Compare* Mot. at 9–10, *with* Opp. at 7–9. And it cannot escape the simple fact that the ruling in *Donagher* is directly on point here. In that case, the court concluded the government was required to plead an explicit *quid pro quo* for violations of Section 666(a)(2) predicated on the payment of campaign contributions and then dismissed the indictment for the government's failure to so plead. 520 F. Supp. 3d at 1046. Recognizing this issue, the Government seeks to distinguish the allegations in the *Donagher* indictment from the Indictment here. *See* Opp. at 7–8. But the alleged facts in the *Donagher* indictment are irrelevant to whether the Government must plead an explicit *quid pro quo* where it charges Section 666(a)(2) based on campaign contributions, as discussed above. *See supra* p. 5. For this same reason, the Government's attempts to distinguish *Pawlowski* and *Siegelman* on their facts also fail.

In addition, the Government's contention that Mr. Sanson has been "fairly advise[d]" of the charges against him is irrelevant. *See* Opp. at 8–9. The Supreme Court has made clear that an indictment must also *allege all elements of the charged crime*, which the Government does not dispute. *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). That the Government believes Mr. Sanson and Trent "know exactly what they have been accused of," Opp. at 8, does not excuse it from this constitutional requirement. To hold otherwise would "deprive [Mr. Sanson] of a basic protection which the guaranty of the intervention of a grand jury was designed to secure," as he could be "convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell v. United States*, 369 U.S. 749, 770 (1962); *see also United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992) (failure to instruct jury on explicit *quid pro*

*quo* was prejudicial error "because it created a reasonable possibility that [defendant] was convicted for activity that is not a crime.").

Finally, the Government's suggestion that Mr. Sanson seeks summary judgment through the Motion is a distraction. Opp. at 1. Mr. Sanson has not asked the Court to weigh evidence—rather, he is asking the Court to require the Government to plead all elements of the charged crime as it is required to do under the law. The Government's citation to *United States v. Jensen*, 93 F.3d 667 (9th Cir. 1996), only reveals its misunderstanding. There, the Ninth Circuit held that a district court improperly considered "evidence that should only have been presented at trial," including a marine accident report and investigator affidavits, in dismissing an indictment. 93 F.3d at 669. The Court need not weigh any evidence here to conclude that the Government failed to allege all requisite elements of Section 666, including an explicit *quid pro quo* as required by *McCormick*.

**D. Read As a Whole, the Indictment Fails to Plead the Requisite Explicit *Quid Pro Quo*.**

There can be no doubt that the Government failed to plead an explicit *quid pro quo* between Mr. Sanson and the Councilmember when it does not even attempt to argue that it did. *See* Opp. at 14. This failure is fatal to the Indictment. *See City of Arcadia v. EPA*, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003) (a party waives arguments it fails to address in its opposition brief). Even setting aside this concession, a review of the Indictment makes clear that the facts alleged do not plead an explicit *quid pro quo* between Mr. Sanson and the Councilmember. *See* Mot. at 17–21. An indictment must "be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007). And to plead an explicit *quid pro quo*, the Indictment must allege a "clear and unambiguous" exchange with "no uncertainty about the terms of the bargain." *Carpenter*, 961 F.2d at 827. The Indictment falls well short: it is internally inconsistent in ways that preclude any inference of a definite, express bargain. *See* Mot. at 8.

The Government cannot reconcile those inconsistencies. Instead, in its Opposition, the Government fixates on the Indictment's recitation of the words "in exchange for" in paragraph 16 to support its contention that the Indictment alleges a *quid pro quo* (notably *not* an "explicit *quid*

*pro quo*," as required by *McCormick*).[5]  Opp. at 14.  But the Government completely ignores other allegations in the Indictment—including quotations from its own recordings—that cut against any allegation of an explicit *quid pro quo*.  For example, the Indictment asserts that Mr. Sanson was willing to contribute to the Councilmember's campaign *before* Trent's June 12 meeting, consistent with Mr. Sanson's prior support of the Councilmember.  Indictment ¶ 16.  Paragraph 16 reinforces that whatever campaign contribution Mr. Sanson was willing to make was not contingent on anything discussed at the meeting, as Trent told the Councilmember, "Dave will be doing something for you." *Id.*  This language reflects an already formed intention to make a campaign contribution to the Councilmember, inconsistent with any contention that the campaign contribution was being negotiated or conditioned.

Other Indictment allegations further show that neither Mr. Sanson nor Trent sought to condition any campaign contribution on the Councilmember's actions.  *See United States v. McGregor*, 2012 WL 13042154 (M.D. Ala. Feb. 29, 2012) (jury instructions for charge under Section 666 stating that "[a] promise of a campaign contribution or a solicitation of a campaign contribution may be an illegal quid pro quo" only if (1) "it is conditioned on the performance of a specific official action;" (2) it is "explicit;" and (3) it is "material.").  The Indictment alleges only that Trent would "check with [Mr. Sanson] to determine if they could pay $5,000 to the Councilmember's IE account and $5,000 in cash," making clear that the only undecided aspect of the donation was its format, not whether it would be made in the first place.  Indictment ¶ 16.  The Government addresses none of this in its Opposition, nor does it dispute Mr. Sanson had already agreed to make the contribution in advance of the June 12 meeting.  *See* Mot. at 18–20.

In fact, the Government's Opposition reveals its own confusion regarding the requirements of an explicit *quid pro quo*.  Twice, the Government sets forth that "[Trent]'s ask of the Councilmember [for his 'assistance and vote in the hopes that the Antioch City Council would

---

[5] The distinction between a bare *quid pro quo* and an explicit *quid pro quo* is not semantic.  As the Ninth Circuit has explained, the "explicitness requirement serves to distinguish between contributions that are given or received with the 'anticipation' of official action and contributions that are given or received in exchange for a 'promise' of official action." *Carpenter*, 961 F.2d at 827.  Only where "a contributor and an official clearly understand the terms of a bargain to exchange official action for money" does the arrangement "move[] beyond 'anticipation'" and become forbidden by law. *Id.*

approve release of the bond'] was the first part of the quid pro quo." Opp. at 2 & 14; *see also* Indictment ¶ 15. The Government has set forth that Trent's purported request for his elected official's assistance was the *quid*. The Opposition then states that "the Indictment then lays out the second part of the quid pro quo" and cites to paragraph sixteen of the Indictment. *See* Opp. at 2 & 14. But it is unclear what the *quo* is: Mr. Sanson's pre-existing "willing[ness]" to make a $10,000 political contribution? Trent Sanson's willingness to check with Mr. Sanson to see if part of the contribution could be paid in cash at the Councilmember's request? *See id.* at 2 & 14. Regardless, this is anything but a "clear and unambiguous" explicit *quid pro quo*. It is telling that even the Government's Opposition cannot specifically identify the purported *quo* beyond a conclusory assertion that "[t]herefore, the Indictment alleges a bribery scheme . . . ." Opp. at 14.[6]

The Indictment's allegations regarding the June 20 meeting between Mr. Sanson and the Councilmember underscore the same issue. The Indictment alleges Mr. Sanson told the Councilmember he had already been in contact with the consultant managing the Councilmember's independent expenditure committee ("IE") and was "still on track" to make a political contribution for "round two"—further demonstrating that Mr. Sanson had already communicated to the consultant his preexisting intent to make a campaign contribution to the Councilmember. *See* Indictment ¶ 17. Mr. Sanson explained that he had contributed in the primary and was "back committed to supporting [the Councilmember] and all that . . . it's not just a false commitment or anything like that," *id.*, indicating Mr. Sanson's past financial support for the Councilmember and existing commitment to make a further contribution, both of which are inconsistent with a purported deal to exchange the campaign contributions for a specific action by the Councilmember.

The allegations also show that, only *after* Mr. Sanson purportedly offered the campaign contribution to the Councilmember, that *the Councilmember* (not Mr. Sanson) said that "he understood what [Mr. Sanson] and [Trent] were asking him to do." *Id.* In other words, the Indictment allegations reveal that Mr. Sanson did not attempt to condition or premise his contribution on whatever action the Councilmember intended to take. And if the *Councilmember*

---

[6] And if the Government cannot even elucidate the *quid pro quo* here, then there is even less reason to believe that the grand jurors were properly instructed in this regard.

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT
CASE NO. 4:25-CR-00090-YGR

Gibson, Dunn & Crutcher LLP

made such a connection between the alleged contribution and his own actions (which the Indictment does not allege he communicated during the meeting), that says nothing about whether Mr. Sanson did so. The Government offers no explanation for these inconsistencies, nor for how a campaign contribution that was pre-planned and already in motion (based on the Indictment allegations) could possibly have been made "in exchange for" a purported agreement that did not exist until after Mr. Sanson's intent to give the contribution was already formed and communicated. *See* Opp. at 14–15. For these same reasons, the Government cannot cure the failures in its Indictment based on its confounding argument that the Indictment "alleges a quid pro quo with greater clarity than the indictments" in *United States v. Kaneshiro*, *United States v. Adams*, and *United States v. Benjamin*, 95 F.4th 60 (2d Cir. 2024). None of those indictments contained facts, much less quoted statements, forming the basis of the purported scheme that directly contradicted the alleged *quid pro quos*.

Finally, the Government seeks to draw inferences from its allegations that make no logical sense. For example, it contends Mr. Sanson "demonstrated . . . his awareness of the bribery scheme" with Trent by telling the Councilmember, "Trent called me and told me that he met with you last week, and I told him OK let me take care of it. I don't want you involved." *See, e.g.*, Opp. at 3. That reading is untenable: a statement expressly distancing Trent—"I don't want you involved"—does not plausibly evidence a conspiracy between Mr. Sanson and his son to bribe the Councilmember before the alleged June 12 meeting. The Court is not required to credit such strained, prosecution-friendly inferences, especially where the Government recorded the relevant interactions, selected the excerpts it deemed most inculpatory, and still cannot allege anything approaching a clear, explicit *quid pro quo*.

### III.   CONCLUSION

For the foregoing reasons, Mr. Sanson respectfully requests that the Court dismiss all counts of the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v). In the alternative, Mr. Sanson respectfully requests that the Court order the Government to produce the grand jury instructions addressing the elements and requirements of 18 U.S.C. § 666(a)(2) pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)(v), or, at minimum, conduct a preliminary review of those instructions *in camera*.

Dated: February 19, 2026

Respectfully Submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Winston Chan*
Winston Y. Chan
Jina L. Choi
Duncan Taylor

*Attorneys for Defendant DAVID SANSON*